Kathleen M. Keller (admitted Pro Hac Vice)
Robert Alexander (admitted Pro Hac Vice)
Elisabeth Oppenheimer (admitted Pro Hac Vice)
BREDHOFF & KAISER, PLLC
805 15th Street, NW, Suite 1000
Washington, D.C. 20005
Telephone: (202) 842-2600
Facsimile: (202) 842-1888
Email: kkeller@bredhoff.com
Email: ralexander@bredhoff.com
Email: eoppenheimer@bredhoff.com

James M. Piotrowski, ISB# 5911
Marty Durand, ISB# 5111
PIOTROWSKI DURAND, PLLC
P.O. Box 2864
1020 Main Street, Suite 440
Boise, Idaho 83701
Telephone: (208) 331-9200
Facsimile: (208) 331-9201
Email: James@idunionlaw.com
Email: Marty@idunionlaw.com

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| DONNIE ELY, a Participant in the PACE Industry Union-Management Pension Fund,<br><br>Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE PACE INDUSTRY UNION-MANAGEMENT PENSION FUND,<br><br>Defendant. | **Case No. 3:18-cv-00315-CWD** |

**MOTION TO ENFORCE PROTECTIVE ORDER**

The Board of Trustees ("Board") of the PACE Industry Union-Management Pension

Fund ("PIUMPF" or "Pension Fund") recently became aware that Plaintiff's counsel James

1

Baker, in addition to representing Plaintiff Mr. Ely, also is representing Clearwater Paper Corp. in connection with its participation in PIUMPF. Mr. Baker has accessed and reviewed documents designated as "Sensitive Strategic Information" in blatant violation of Section 5(b)(10) of the stipulated Protective Order, which was entered in part precisely to shield that information from PIUMPF's participating employers and their legal and strategic advisors. Defendant requests this Court to provide appropriate relief to limit and redress the injury caused to PIUMPF by Mr. Baker's violation.

## BACKGROUND

Since the outset of this case, including at the June 3, 2019 status conference, the Board has expressed concern to Plaintiff's counsel and to the Court that Plaintiff's counsel was seeking to obtain confidential PIUMPF documents – especially settlement agreements related to collections issues – while potentially representing another employer, Clearwater, that participates in PIUMPF. As the Board's counsel explained to Plaintiff's counsel in a series of letters, PIUMPF's concern regarding this information is that Plaintiff's counsel would be in a position to exploit the information revealed in the documents for the benefit of Clearwater and to the detriment of PIUMPF. *See* Oppenheimer Decl., Exs. 1-5. For example, if Plaintiff's counsel had access to confidential documents regarding the Board's strategies and collections related to other withdrawing employers, he could assist Clearwater in negotiating a withdrawal from PIUMPF on terms more favorable to Clearwater and less favorable to PIUMPF than would otherwise be the case. *Id.* Thus, allowing sensitive settlement documents to fall into the hands of the attorneys or other agents of Clearwater (or any other employer that might contemplate withdrawal from PIUMPF) would pose a direct threat to the financial interest of PIUMPF – and, in turn, to the retirees who receive their pensions from PIUMPF, including Mr. Ely himself, given that the risk

of those retirees losing future pension benefits grows with every additional dollar that PIUMPF is unable to collect.

In response to these letters, Mr. Baker created the impression that PIUMPF's concerns about his possible connection to Clearwater were insubstantial. Mr. Baker, for example, asserted that the question asked by PIUMPF's counsel as to his possible links to Clearwater was "misguided" and that the assumption that Mr. Baker represented Clearwater was "unwarranted." Oppenheimer Decl., Exs. 6-8. During the same time period, Mr. Baker signed a set of objections and responses to PIUMPF's requests for production in which he represented that Plaintiff Ely "does not have any agreement with Clearwater relating to his lawsuit against PIUMPF." Oppenheimer Decl., Ex. 9 at 24-25.

In light of the Board's concern, the Court entered a provision in the stipulated protective order that provides as follows:

> Documents and information related to confidential settlements between the Pension Fund and other employers who have withdrawn from the Plan **shall not be accessed by, or provided, shown, or made available to any person who represents or provides legal or strategic advice to any employer regarding participation in the Pension Plan or withdrawal from the Pension Fund**. Such information or documents will be expressly identified by the designating party with the marking "SENSITIVE STRATEGIC INFORMATION."

Dkt. 63 at § 5(b)(10) (emphasis added). The Protective Order was in accord with Ninth Circuit caselaw that provides that it is appropriate to enter a protective order prohibiting a party's attorney from accessing certain documents in situations where the attorney has a relationship with clients beyond the litigation and the information in the documents would give a competitive advantage to the attorney and those other clients. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992); *St. Alphonsus Med. Ctr. v. St. Luke's Health Sys.*, 2013 WL

3

139324 (D. Idaho Jan. 10, 2013); *see also* Oppenheimer Decl., Exs. 1, 4 (letter to Mr. Baker citing *Brown* and *St. Alphonsus*).

In the course of this litigation, Defendant produced 111 documents marked "Sensitive Strategic Information" (out of more than 6,000 documents produced in total). Oppenheimer Decl., ¶ 11. This information consisted primarily of spreadsheets summarizing settlements and collections involving the Accumulated Funding Deficiency ("AFD") Rule, correspondence regarding settlements, actual settlement agreements, and, *in response to Ely's motion to compel* (Dkt. 68), attorney advice regarding AFD Rule collections and strategy.

It is clear that Mr. Baker "accessed" at least some of the material designated by Defendant as Confidential and Sensitive Strategic Information. For instance, at the August 13, 2019 30(b)(6) deposition of PIUMPF's Board of Trustees, Mr. Baker used a spreadsheet that was marked Sensitive Strategic Information as a deposition exhibit. Oppenheimer Decl., Exs. 10-11. The Board's counsel noted on the record that the document was marked Sensitive Strategic Information and thus was subject to the Protective Order's special provisions. Oppenheimer Decl., Ex. 10 at 160:5-19. The spreadsheet listed AFD assessments for each withdrawing employer, amounts actually collected from the employer, and whether the collection was pursuant to settlement. Oppenheimer Decl., Ex. 11. Mr. Baker asked numerous questions about the spreadsheet at the 30(b)(6) deposition, such as whether ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Oppenheimer Decl., Ex. 10.

Given Mr. Baker's access, review and use of documents marked Sensitive Strategic Information, his prior communications on the issue that called the concerns expressed by the Board's counsel "misguided" and "unwarranted," and indeed his silence in the face of the Court's order stating that "any person who represents or provides legal or strategic advice to any employer regarding participation in the Pension Plan or withdrawal from the Pension Fund" shall not access Sensitive Strategic Information, the Board believed until recently that Mr. Baker did not "represent[] or provide[] legal or strategic advice to any employer regarding participation the Pension Fund or withdrawal from the Pension Fund."  However, at the February 12, 2020 30(b)(6) deposition of Clearwater, a current participating employer, Clearwater's deponent testified unequivocally that Mr. Baker (1) represented Clearwater before this lawsuit began, (2) advised Clearwater that it likely could not itself bring a lawsuit challenging the AFD Rule (prompting Clearwater's in-house counsel to contact Donnie Ely, a participant who could bring a suit), and (3) continues to currently represent Clearwater "in managing its relationship with PIUMPF."  Oppenheimer Decl., Ex. 12.  In addition, shortly after Clearwater informed PIUMPF that Clearwater and Ely have had a common interest agreement regarding this lawsuit since before the lawsuit was filed, Mr. Baker "supplemented" the responses to the Board's requests for production and admitted that, directly contrary to his previous representation, Clearwater and Ely *did* have an agreement related to this lawsuit, which he himself had signed.  Oppenheimer Decl., Ex. 13.  These revelations precipitated this motion to enforce the Protective Order.

## ARGUMENT

*A.  Nature of the Violation*

The Court has authority under both Rule 37 and its inherent power to sanction a party or its counsel for violation of the Protective Order.  *Westinghouse Elec. Corp. v. Newman &*

*Holtzinger, P.C.*, 992 F.2d 932, 934-35 (9th Cir. 1993); *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1035 (9th Cir. 2012); *see also Apple, Inc. v. Samsung Elecs. Co*., 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014). Such sanctions "'may serve either remedial and compensatory purposes or punitive and deterrent purposes,' but ultimately, '[t]he imposition and selection of particular sanctions are matters left to the sound discretion of the trial court.'" *Harmon v. City of Santa Clara*, 323 F.R.D. 617, 626 (N.D. Cal. 2018) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 784 (9th Cir. 1983)).

In this case, Mr. Baker plainly violated the Protective Order by accessing material PIUMPF designated as Sensitive Strategic Information, even though, as a "person who represents or provides legal or strategic advice to any employer regarding participation in the Pension Plan," he was in the class of persons that the Order expressly barred from accessing such material. Indeed, the violation, as Mr. Baker well knew, was *precisely* what the Protective Order aimed to prevent: Core information about AFD Rule settlements was provided to an attorney who provides legal and strategic advice to a participating employer at PIUMPF. The harm to the Board is heightened by the fact that the Board recently (but before the 30(b)(6) deposition of Clearwater) produced to Mr. Baker's firm unredacted attorney advice, including advice regarding strategy for AFD Rule collections, as a result of Ely's motion to compel (Dkt. 68).

In a letter that that preceded the filing of this motion, Mr. Baker did not dispute that he does indeed represent Clearwater in connection with its participation in PIUMPF. Mr. Baker, however, attempted to rationalize the injury caused by his violation by representing that Clearwater "has no use for this information because it has no plan to withdraw from PIUMPF." Oppenheimer Decl., Ex. 14. That representation is highly dubious, as is explained in a moment. But the first, and inescapable, point is that the Protective Order does not distinguish between

employers with existing "plans to withdraw" and those that do not. To the contrary, the Order expressly uses the conjunctive word "and" to bar access both to those who advise employers as to "participation" in PIUMPF *and* to those who do so as to "withdrawal" from PIUMPF. And the Order certainly does not authorize counsel to mislead opposing counsel about relationships with participating employers so as to deny opposing counsel the opportunity to raise concerns about those relationships with the Court before turning over discovery materials.

Additionally, whatever Mr. Baker's representations about Clearwater's lack of intention to withdraw from PIUMPF, Clearwater's representative's testimony was much more equivocal. *See* Oppenheimer Decl., Ex. 12 at 39:21-41:13 ("We were open to withdrawal"); 15:8-16:2 ("[W]e hadn't withdrawn, but any good company looks at risk and understanding impact of that to the organization and to its employees specifically"); 58:8-60:16 ("It was a consideration of whether we wanted to propose a withdrawal" during contract negotiations). Consistent with this, the documents produced by Clearwater show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, *see, e.g.*, Oppenheimer Decl., Ex. 15.

Although Mr. Baker did not raise this point in his initial letter regarding this issue, Mr. Baker's colleague claimed during a later meet and confer session that the Protective Order does not mean what it plainly says because the header of Section 5(b) in the Protective Order is "Limited Third-Party Disclosures," and therefore Mr. Baker did not realize it applied to disclosures to counsel of record. Oppenheimer Decl., ¶ 18. This argument is utterly incredible in light of (1) the text of Section 5(b), which makes clear that Section 5(b) governs who may see protected information, (2) the text of 5(b)(10) itself, and (3) PIUMPF's concern – expressed to Mr. Baker on at least five different occasions – about providing information regarding AFD settlement issues to Ely's counsel in this case if counsel also represented Clearwater. If

Plaintiff's counsel had any genuine concerns regarding exactly what the Protective Order meant – which is frankly implausible – the proper course of action was to seek clarification, not to proceed to review the exact documents in dispute.[1]

   *B. Remedy Requested*

The appropriate remedy to redress violations of the Protective Order depends, in part, on their nature. PIUMPF does not yet know the magnitude of the improper use of the material. Therefore, the Board respectfully requests that the Court enter an order first directing Mr. Baker to submit a declaration detailing:

> (1) which documents marked as Sensitive Strategic Information Mr. Baker (or any other person employed or engaged by Baker McKenzie who represents or provides or has provided legal or strategic advice to Clearwater or another employer participating in PIUMPF) has accessed, been shown, reviewed, or had access to, and

> (2) whether any information from those documents has been communicated to anyone else who works at, is an agent for, or represents Clearwater or another participating employer.

The Board's concerns about what information was shared with Clearwater are heightened by the fact that Clearwater and Ely had a common interest agreement related to this litigation that was not just undisclosed, but was affirmatively hidden. However, to be clear, the Board's concerns are not resolved even if no information has yet been shared with Clearwater or its agents (beyond Mr. Baker). As the Ninth Circuit recognized in *Brown Bag Software*, 960 F.2d at 1465, and as PIUMPF emphasized during negotiations over the Protective Order, one critical issue is that Mr. Baker now knows information about AFD settlements that he cannot mentally

---

[1] Plaintiff's counsel also claimed during the meet and confer process that it would be logistically impossible to avoid reviewing documents marked Sensitive Strategic Information. As the documents were produced electronically and with metadata coding of confidentiality, it would have been straightforward, as a technological matter, to block any given attorney from accessing documents coded Sensitive Strategic Information.

compartmentalize or ignore should he ultimately negotiate Clearwater's withdrawal, even assuming he acts in complete good faith. That is the point of the Protective Order provision.

Once the scope of the Protective Order violation is known, appropriate remedies and sanctions can be fashioned. As such, the Board respectfully requests the opportunity to seek further relief as appropriate after receiving Mr. Baker's declaration.

Defendant also requests that the Court award the Board its attorneys' fees for bringing this motion. *See* Fed. R. Civ. P. 37(b); *see also Apple*, 2014 WL 12596470, at *5, 10.

        Respectfully submitted,

        */s/ Elisabeth Oppenheimer*
        Kathleen M. Keller*
        Robert Alexander*
        Elisabeth Oppenheimer*
        **Bredhoff & Kaiser, P.L.L.C**.
        805 15th St. N.W., Suite 1000
        Washington, D.C. 20005
        Telephone: (202) 842-2600
        Facsimile: (202) 842-1888
        Email: kkeller@bredhoff.com
        Email: ralexander@bredhoff.com
        Email: eoppenheimer@bredhoff.com

        James M. Piotrowski, ISB# 5911
        Marty Durand, ISB# 5111
        **PIOTROWSKI DURAND, PLLC**
        P.O. Box 2864
        1020 Main Street, Suite 440
        Boise, Idaho 83701
        Telephone: (208) 331-9200
        Facsimile: (208) 331-9201
        Email: James@idunionlaw.com
        Email: Marty@idunionlaw.com

        *Attorneys for Defendant*

Dated: March 23, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of March, 2020, I filed the foregoing electronically through the CM/ECF system, which caused the following parties of counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

/s/ Elisabeth Oppenheimer
Elisabeth Oppenheimer

**CERTIFICATE OF CONFERENCE**

I hereby certify, pursuant to Local Rule 37.1, that counsel for the parties conferred by letter and by phone prior to the filing of this motion, but were unable to resolve the issue.

/s/ Elisabeth Oppenheimer
Elisabeth Oppenheimer