UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DONNIE ELY, a Participant in the PACE Industry Union-Management Pension Fund,<br><br>                Plaintiff,<br><br>v.<br><br>BOARD OF TRUSTEES OF THE PACE INDUSTRY UNION-MANAGEMENT PENSION FUND,<br><br>                Defendant. | Case No. 3:18-cv-00315-CWD<br><br>**MEMORANDUM DECISION AND ORDER**<br>**RE: Dkt. 99, 103, 143, 153** |

## INTRODUCTION

Before the Court are ten pending motions,[1] with numerous supporting documents filed under seal pursuant to the parties' protective order. Considered here are Plaintiff's motion to unseal, Defendant's motion for relief to enforce the protective order, and Plaintiff's motion to supplement. (Dkt. 99, 103, 143, and 153.)[2] The motions have been fully briefed and are ripe for the Court's consideration.

---

[1] Docket Nos. 99 and 103 appear to be the same, with one motion filed under seal and the other filed with redactions.
[2] The Court will issue a separate memorandum decision deciding the other pending motions.

**MEMORANDUM DECISION AND ORDER - 1**

The facts and the legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the court conclusively finds that the decisional process would not be significantly aided by oral arguments, the motions are decided based on the record. For the reasons that follow, the Court will grant, in part, Plaintiff's motion to unseal; deny Defendant's motion for relief to enforce the protective order; and, deny Plaintiff's motion to supplement.

## FACTUAL BACKGROUND

Plaintiff Donnie Ely was, until last year, Plant Manager of Clearwater Paper Corporation's Idaho plant. Ely is a vested participant in a declining multiemployer pension plan.

Defendant Board of Trustees of The Pace Industry Union-Management Pension Fund is a multiemployer defined benefit pension plan that was established in 1963 to provide retirement benefits to workers who were represented by what was then the United Paperworkers International Union, which later became part of the United Steelworkers of America (USW). As required by the Taft-Hartly Act, the pension fund ("PIUMPF") is governed by a trust agreement and is administered by the Board of Trustees, which consists of equal representation by employer and union representatives.

Due to the age of the pension fund and decreasing employment in the pulp and paper industry covered by the pension fund, since at least 1995 the number of inactive vested participants and beneficiaries have exceeded the number of actively employed participants. By 2000, the annual benefit payments were almost double what the pension

**MEMORANDUM DECISION AND ORDER  - 2**

fund was receiving in employer contributions and, by 2007, annual benefit payments were more than triple the total employer contributions.

Pursuant to the Pension Protection Act of 2006 ("PPA"), which is part of ERISA, the Board of Trustees adopted a Rehabilitation Plan in 2010, which was later amended in November of 2012. One provision of the 2012 Updated and Amended Rehabilitation Plan requires payment of an Accumulated Funding Deficiency (AFD) Exit Fee from contributing employers who choose to withdraw from the fund. Ely challenges the AFD Exit Fee provision in the 2012 Amended Rehabilitation Plan.

Ely contends that the AFD Exit Fee violates ERISA's requirement that rehabilitation plans consist of "reasonable measures to emerge from critical status [after the 10 year rehabilitation period] or to forestall insolvency," 29 U.S.C. 1085(e)(3)(ii), ERISA § 305(e)(3)(ii), because Ely claims the AFD Exit Fee has accelerated the Fund's insolvency.

## ANALYSIS

1. **Plaintiff's Motion to Unseal**

    A.  *Background*

    On June 7, 2019, the Court approved and entered a Stipulated Protective Order that stated in part: "Confidential information" consists of "(a) information prohibited from disclosure by statute; (b) trade secrets or proprietary material; (c) commercial, financial or plan information that a party or person has maintained as confidential; or (d) sensitive financial information concerning any individual." (Dkt. 61.) The scope of the protective order was limited to materials produced during discovery.

**MEMORANDUM DECISION AND ORDER  - 3**

The order set forth a process for designation of documents as "confidential." The order indicated that it did not, by itself, "authorize the filing of any document under seal. Any party wishing to file a document designated as Confidential Information in connection with a motion, brief or other submission to the Court must comply with Dist. Idaho L. Rule 5.3." (Dkt. 61 at 9.) Further, the order required a party wishing to present documents designated as confidential at a hearing or trial to bring the issue to the Court's attention by motion or in a pretrial memorandum without disclosing the confidential information. (Dkt. 61 at 10.) The parties agreed "[t]he Court may thereafter make such orders as are necessary to govern the use of such documents or information at trial." *Id.*

Here, each party has filed numerous documents and unredacted memoranda under seal. (*See* Dkt. 84, 85, 90, 93, 102, 108, 109, 112, 121, 126, 129, 132, 135, 138, 144, and 150). Ely requests the Court to order all sealed records be unsealed, and to vacate the protective order.

The Board of Trustees does not object to unsealing most of the parties' filings. In fact, the Board contends that the parties "reached an agreement in mid-March that nearly all of the documents Ely sought to file could be filed on the public docket." (Dkt. 152 at 2.)[3] The Board of Trustees represents that, despite such agreement, Ely ultimately filed a total of 180 documents under seal. *Id.* Nonetheless, the Board of Trustees argues two categories of documents filed on the public docket should remain under seal: (1)

---

[3] The Board of Trustees represents that the parties met and conferred upon the filing of Ely's motion for summary judgment, filed at Docket 85, and that after reviewing each of the attachments to Ely's motion and related motion in limine, the Board's counsel identified only two exhibits that should remain under seal. (Dkt. 152 at 4.) Yet, all of the documents filed in conjunction with the two motions were filed under seal.

**MEMORANDUM DECISION AND ORDER - 4**

information regarding the Board of Trustees' settlement of employer liabilities (e.g., AFD Exit Fee payments) and (2) attorney-client advice or attorney work product. The Board of Trustees identified the following documents it contends should remain filed under seal:

- AFD collection reports or deposition testimony regarding those reports: Dkt. 85, Baker Decl., Ex. 38; Dkt. 103, Oppenheimer Decl., Exs. 10-11; Dkt. 138, Baker Decl., Exs. 4, 11, 14-15, 21-22; Dkt. 109, Knight Decl., Ex. 47;

- Filings containing attorney-client advice or work product: Dkt. 85, Baker Decl., Ex. 7 ; Dkt. 90 (Def.'s Mem. in Supp. of Mot. to Exclude) at 6 n.1; Dkt. 135-1 ¶¶ 21, 32; Dkt. 150, ¶¶ 21, 32;

- Board of Trustees minutes containing attorney-client advice or work product: Dkt. 90, Keller Decl., Exs. 15-18; Dkt. 100, Baker Decl., Ex. 3[4]; Dkt. 129, Baker Decl., Ex. 10; Dkt. 135, Baker Supp. Decl., Exs. G, K, M-Q, T; Dkt. 138, Baker Decl., Exs. 5-10, 19; Dkt. 144, Ex. F. The Board of Trustees contends these minutes should be filed under seal or, alternatively, replaced with the versions of the minutes initially produced, where privileged material is redacted.

The Board of Trustees is opposed also to Ely's request to vacate the Protective Order in its entirety, on the grounds that the order is necessary to prevent distribution of documents containing internal decision-making and other information that was not relied

---

[4] The Court did not locate Ex. 3 of the Baker Decl. at Docket 100, which is a motion to seal. However, there is an Ex. 3 attached to the Baker Decl. at Docket 102, which is related to Docket 100. The Court considered Docket 102 to be the correct reference.

**MEMORANDUM DECISION AND ORDER - 5**

upon for purposes of the cross-motions for summary judgment. The Board of Trustees explains that it produced more than 30,000 pages of documents in this litigation, and only a minute fraction of those documents has been relied upon in the parties' briefing.

Considering the Board of Trustees does not object to unsealing the majority of the documents filed under seal, the Court will consider only whether the documents the Board of Trustees identified above should remain sealed.

### B.   Legal Standard

Historically, courts have recognized the public's general right to inspect, review, and copy public records and documents. This includes judicial records. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (Internal citation omitted). Access to judicial records is not absolute though. *Id*. Records traditionally kept secret for important policy reasons, such as grand jury transcripts and warrants, have not always been subject to the right of public access. *Id*. For almost all other documents, a strong presumption of access is the starting point. *Id*.

Therefore, a party seeking to seal a judicial record bears the burden of overcoming the presumption by showing compelling reasons why material should be sealed. *Id*. The party must "articulate[ ] compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process." *Id*. at 1178–79 (Internal quotations and citations omitted). The Court must not base its decision whether to seal documents on hypothesis or conjecture. *Id*. at 1179.

**MEMORANDUM DECISION AND ORDER  - 6**

Judicial records attached to dispositive motions are treated differently from records attached to non-dispositive motions. *Melaleuca Inc. v. Bartholomew*, No. 4:12-CV-00216-BLW, 2012 WL 5931690, at *1–2 (D. Idaho Nov. 27, 2012). "Those who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that compelling reasons support secrecy. A good cause showing under Rule 26(c) will suffice to keep sealed records attached to non-dispositive motions." *Kamakana* at 1180 (internal quotations and citation omitted).

The strong presumption of public access to judicial documents applies fully to dispositive pleadings, because the resolution of a dispute on the merits is at the heart of the interest in ensuring that the public understands the judicial process. *Id*. at 1179. A party seeking to maintain the secrecy of a document filed with a dispositive motion must meet a high threshold of showing that compelling reasons supported by specific factual findings outweigh the general right of access and public policies favoring disclosure. *Kamakana*, 447 F.3d at 1178-80. Under the "compelling reasons" standard, the Court must weigh "relevant factors," base its decision "on a compelling reason," and "articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 679 (9th Cir. 2010) (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

The presumption of public access does not apply in the same way to non-dispositive motions, "such that the usual presumption of the public's right of access is rebutted." *Kamakana*, 447 F.3d at 1179 (citing *Phillips v. General Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002). The distinction exists because the public does not have

**MEMORANDUM DECISION AND ORDER - 7**

the same need for access to court records attached to non-dispositive motions, as those records are often only tangentially related to the underlying suit. *Id*. If a district court grants a protective order to seal documents during discovery, the Court has already determined that good cause exists to protect the documents from being disclosed to the public by balancing the needs for discovery against the need for confidentiality. *Id*. at 1180. Applying a strong presumption of access to already sealed records only indirectly relevant to the merits of the case eviscerates the district court's broad power to fashion protective orders. *Id*. (internal citation omitted).

### C.     Disposition

The Court has carefully examined the documents the Board of Trustees asserts should remain filed under seal and considered them in the context of the Court's order partially granting Ely's motion to compel, (Dkt. 78), the parties' cross motions for summary judgment, the parties' protective order, and in light of Ninth Circuit authority. The Court is mindful of its order allowing disclosure of documents to Ely despite the legal advice contained therein. The Court permitted disclosure provided the legal advice concerned the structure and design of the rehabilitation plan vis-à-vis the PPA's "reasonableness" requirements; the intended purpose of the advice was to benefit the plan beneficiaries; and, it was clear that there was no concern or advice relating to the individual trustees' personal liability.

Under the provision of the PPA at issue here, the Board of Trustees is not the real client—the Board, as Plan Administrator, is acting on behalf of the plan beneficiaries, who are the intended recipients of the professional services rendered. *See U.S. v. Evans*,

**MEMORANDUM DECISION AND ORDER - 8**

796 F.2d 265, 265-66 (9th Cir. 1986) (holding there was no attorney-client privilege between a pension trustee and an attorney who advised the trustee regarding the administration of the plan). *See also United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999) (attorney-client privilege cannot be invoked against the plan beneficiaries if the advice is on a matter of plan administration and does not implicate the trustee in any personal capacity); 29 U.S.C. § 1085, ERISA § 305.

Nonetheless, the protective order stipulated to by the parties, and approved and entered pursuant to Fed. R. Civ. P. 26(c)(1), maintains the confidentiality of documents produced during discovery that contain confidential information as defined therein. Its purpose was to protect such documents from disclosure to third-parties unless an enumerated exception applied. The parties stipulated that the order would remain in force after dismissal or entry of final judgment.

Turning first to Ely's motion to unseal, which seeks to vacate the protective order in its entirety, the Court finds Ely has not articulated a compelling reason to do so. Further, the Board of Trustees represent that it submitted thousands of documents, the majority of which were not filed in support of the pending dispositive motions, and which remain subject to protection from disclosure pursuant to the protective order. Dissemination of confidential discovery documents for non-judicial purposes is unusual and rightly so. *Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2015 WL 7282841, at *6 (E.D. Cal. Nov. 18, 2015). The discovery rules are "a matter of legislative grace," *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984), and the purpose of discovery is to

**MEMORANDUM DECISION AND ORDER  - 9**

"facilitate orderly preparation for trial, not to educate or titillate the public," *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982).

The Court therefore declines to vacate the protective order. (Dkt. 61.) The Board of Trustees has produced a substantial number of documents to Ely for the express purpose of facilitating discovery in this litigation. Ely has not, however, demonstrated a compelling need at this juncture to vacate the protections of the order preventing disclosure to the public and third parties of documents designated as confidential, and which play no role in determining the litigants' substantive rights. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1100 (9th Cir. 2016) (explaining documents passed between the parties in discovery lie "beyond the presumption of access" applicable to documents that play a role in determining litigants' substantive rights).

Consequently, the Court finds the Board of Trustees has established good cause to retain documents under seal which were filed in support of non-dispositive discovery motions. These motions and supporting documents relate to whether documents filed in the case should remain under seal, or to the interpretation of the parties' protective order. As such, the documents have no bearing upon the motions for summary judgment and are not directly related to the merits of this case. Further, certain documents reveal potential settlements or compromises reached between PIUMPF and specific employers participating in PIUMPF, and the Court finds good cause exists for retaining these documents under seal. *See* Baker Decl., Exs. 4, 11, 14, 15, 21, 22. (Dkt. 138); Oppenheimer Decl., Exs. 10, 11 (Dkt. 103.) Accordingly, the Court finds good cause has been shown such that the documents identified by the Board of Trustees and which are

**MEMORANDUM DECISION AND ORDER - 10**

filed with non-dispositive motions that do not have a role in determining the parties' substantive rights may remain under seal.[5]

However, the Court finds the Board of Trustees has not put forth compelling reasons why the majority of materials submitted in conjunction with the parties' motions for summary judgment and related motions in limine, and identified above, should remain sealed.[6] For instance, Exhibit 38 to the Baker Declaration, submitted in support of Plaintiff's Motion for Summary Judgment, (Dkt. 85), is a one page report setting forth the status of AFD Exit Fee payments. There is no information about any terms of settlement, and certain confidential information is redacted. The AFD Exit Fee payments are at the heart of Ely's claim under ERISA, and other than its general assertion, the Board of Trustees has not identified any particularly compelling reason that this document should remain under seal.

Other documents contain advice or information provided to the Board in light of the Board's obligation to consider "reasonable measures" to forestall insolvency under ERISA § 305. *See* Docket 90 at 6 n.1; Docket 135-1 ¶¶ 21, 32; Docket 150, ¶¶ 21, 32. The Board of Trustees' obligations under ERISA § 305 were discussed also with the Board of Trustees and others present during the board meetings, and thus meeting minutes filed to support or oppose the motions for summary judgment should be

---

[5] These documents include the following: Oppenheimer Decl., Exs. 10 – 11, Docket 103; Baker Decl., Exs. 4, 11, 14, 15, 21, 22, Docket 138; Baker Decl., Ex. 3, Docket 102; Baker Decl., Exs. 5 – 10, 19, Docket 138; Baker Decl., Ex. F, Docket 144.

[6] The identified documents include the following: Baker Decl., Ex. 38, Docket 85; Knight Decl., Ex. 47, Docket 109; Baker Decl., Ex. 7, Docket 85; Docket 90 at 6, n.1; Docket 135-1, ¶¶ 21, 32; Docket 150, ¶¶ 21, 32; Keller Decl., Exs. 15 – 18, Docket 90; Baker Decl., Ex. 10, Docket 129; Baker Supp. Decl. Exs. G, K, M-Q, and T, Docket 135.

**MEMORANDUM DECISION AND ORDER - 11**

unsealed. *See* Keller Decl., Exs. 15-18, Docket 90; Baker Decl., Ex. 10, Docket 129; Baker Supp. Decl., Exs. G, K, M – Q, T, Docket 135.[7] Moreover, neither party identified for the Court the portions of the unredacted documents at issue, making it difficult for the Court to articulate a factual basis for its ruling without engaging in speculation.

Nonetheless, the Court finds the Board of Trustees has articulated sufficiently compelling reasons to maintain two documents under seal that were submitted with the parties' dispositive motions. The first is Exhibit 47 to the Knight Declaration, submitted with the Board of Trustees' motion for summary judgment. (Dkt. 109-4 at 96 – 99.) This document is a spreadsheet containing "Counsel Notes" about the status of settlement discussions with third parties, and some of the notes reveal the contents of these settlement discussions. Settlement negotiations, if accessed by the public, have the potential to be used for an improper purpose, and the Court finds the need to protect settlement negotiations that the Board of Trustees' counsel may have had with third parties outweighs any necessity for disclosure. *See, e.g., Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *2 n.1 (E.D. Cal. Aug. 14, 2014) (finding presumption of public access gave way when documents concerned settlement discussions); Fed. R. Evid. 408.[8]

---

[7] The Board of Trustees asserts that only relevant pages of board meeting minutes should be filed. However, the Board of Trustees did not delineate which pages of the board meeting minutes contain relevant information. Redactions of board meeting minutes, which appear to appropriately redact personal information and attorney advice regarding other lawsuits or legal matters, may remain redacted. The parties did not raise any concerns with respect to the redactions.

[8] Conversely, Ex. 38 to the Baker Declaration, (Dkt. 85-7 at 47), is a similar document but confidential information is redacted.

**MEMORANDUM DECISION AND ORDER - 12**

The second document is Exhibit 7, attached to the Baker Declaration, and submitted with Ely's memorandum in support of his motion for summary judgment. (Dkt. 85-3 at 140 – 144.) This document contains an in-depth legal analysis of the PPA and certain other federal statutes, and, if accessed by the public, has the potential to be used for an improper purpose. Certainly, the Board of Trustees did not intend for others unrelated to this litigation to capitalize on the legal advice of attorneys hired to assist the Board in its role as Plan Administrator. *See Kamakana*, 447 F.3d at 1179 ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). Considering these factors, the Court finds the need to protect attorney work product outweighs any necessity for disclosure to the public, and compelling reasons justify maintaining this document under seal.

Accordingly, the Court will grant in part, and deny in part, Ely's motion to unseal.

2.      **Defendant's Motion to Enforce Protective Order**

Related to Ely's motion to vacate the protective order is the Board of Trustees' motion to enforce the terms of the protective order.[9] Paragraph 5 of the protective order entered by the Court pursuant to the parties' stipulation provides as follows:

> **(a) General Protections.** Confidential Information shall not be used or disclosed by the parties, counsel for the parties or

---

[9] The Board of Trustees' motion was filed on March 23, 2020. (Dkt. 99, 103.) Ely's motion to vacate the terms of the protective order was filed later, on May 6, 2020. (Dkt. 143.)

**MEMORANDUM DECISION AND ORDER - 13**

> any other persons identified in subparagraph (b) for any purpose whatsoever other than in this litigation, including any appeal thereof.
> **(b) Limited Third-Party Disclosures.** The parties and counsel for the parties shall not disclose or permit the disclosure of any Confidential Information to any third person or entity except as set forth in subparagraphs (1)-(9). Subject to these requirements, the following categories of persons may be allowed to review Confidential Information:
> **(1) Counsel.** Counsel for the parties and employees of counsel who have responsibility for the action;
> \*\*\*
> **(10) Special Protection of Sensitive Strategic Documents.** Documents and information related to confidential settlements between the Pension Fund and other employers who have withdrawn from the Plan shall not be accessed by, or provided, shown, or made available to any person who represents or provides legal or strategic advice to any employer regarding participation in the Pension Plan or withdrawal from the Pension Fund. Such information or documents will be expressly identified by the designating party with the marking "SENSITIVE STRATEGIC INFORMATION."

The parties agreed that the terms of the order would remain in force after dismissal or entry of final judgment. (Dkt. 61 at 11.)

      The Board of Trustees represents that, prior to entering the protective order, it expressed concern that Ely's counsel, Mr. James Baker, was seeking to obtain confidential documents in conjunction with his role as a representative for Clearwater, Ely's former employer and a participant in the Plan. Specifically, the Board was concerned that counsel for Clearwater, or for other employers participating in the Plan, would obtain access to documents regarding settlements of AFD Exit Fee amounts charged to withdrawing employers. At that time, Ely's counsel denied his client had any

**MEMORANDUM DECISION AND ORDER - 14**

agreement with Clearwater related to this lawsuit. Later, however, it came to light that Mr. Baker had represented Clearwater prior to initiating this lawsuit, and Clearwater's Rule 30(b)(6) designee stated during her deposition that Mr. Baker continues to represent Clearwater in managing its relationship with PIUMPF. Ely revealed also that he had entered into a common interest agreement with Clearwater.

The Board of Trustees represents that, during discovery, it produced 111 documents marked "Sensitive Strategic Information" (SSI) to Ely's counsel, and that counsel's review of the same violates provision 5(b)(10) in light of the revelation that Mr. Baker continues to represent Clearwater. The Board of Trustees asks the Court to order Mr. Baker to submit a declaration detailing the documents he reviewed which were marked as SSI, and to disclose whether he communicated information contained therein to anyone associated with Clearwater or any other employer participating in PIUMPF. The Board of Trustees seeks recovery of attorney fees for bringing the motion.

Mr. Baker responds that, under a plain reading of the terms of the protective order, he has not violated its terms, citing provision 5(a) and 5(b)(1). He affirmatively represents that he has not shared anything with Clearwater, and that nothing prevents him, as Ely's counsel, from reviewing confidential information. Further, he argues that any AFD Exit Fee settlements between PIUMPF and withdrawing employers are not confidential, because such activities were carried out in the Trustees' role as fiduciaries under ERISA acting on behalf of Plan beneficiaries. Ely asserts also that documents regarding settlements of amounts charged to withdrawing employers pursuant to the Plan's AFD Exit Fee provision were exchanged freely with others, interjecting a factual

**MEMORANDUM DECISION AND ORDER - 15**

dispute as to the documents' purported confidentiality. Ely seeks recovery of attorney fees for his response in opposition to the motion.

The Board of Trustees seeks a court order allowing it to conduct discovery to learn whether Ely's counsel has accessed information marked SSI, such that it can ostensibly prove a violation, for which, at present there are no consequences. The Court recognizes the Board's concern that revelation of confidential information regarding collection of the AFD Exit Fee may allow those employers seeking to withdraw from PIUMPF a competitive advantage. But, the Court understands Clearwater has not sought to withdraw from PIUMPF, and no other pending employer withdrawals have been brought to the Court's attention. The Court declines to order the relief sought by the Board in the absence of actual disobedience resulting in a detriment to PIUMPF.

Further, under a plain reading of the protective order, it is not clear that Ely's counsel violated its terms even if he has reviewed SSI. A protective order should be read in a reasonable and common sense manner so that its prohibitions are connected to its purpose. *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). The protective order clearly allows confidential information to be seen by Ely's counsel. SSI falls within the definition of confidential information. Once shared, the order unequivocally prohibits Ely's counsel from using any confidential information, including SSI, for "any purpose whatsoever other than in this litigation." It prohibits such information from being shared with third parties.

Thus, paragraph 5(b)(10) appears superfluous. Mr. Baker is prohibited from disseminating or using the information he has reviewed "for any purpose other than this

**MEMORANDUM DECISION AND ORDER - 16**

litigation." (emphasis added). Accordingly, it appears the protective order adequately provides the protection the Board seeks. *See, e.g., In re Dual-Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993) (finding technical violation of protective order by using discovery from lawsuit to advance a later lawsuit).

And last, the Court finds that a reasonable reading of the protective order, to comply with common sense, must "connect its prohibitions to its purpose," which in this case is protection of potentially private settlements from public or other disclosure outside of this litigation.[10] *See, id.* It is unclear how Mr. Baker, whom the Board early on suspected of representing Clearwater, could effectively represent Ely without access to confidential information, including SSI. If the Board of Trustees had concerns about Mr. Baker's mere access to such information, it could have brought the matter before the Court for a more in depth review. *See, e.g., Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1469 (9th Cir. 1992) (after evidentiary hearing, judge issued protective order preventing litigant's in-house counsel from directly viewing documents designated as confidential and received by outside counsel during discovery, and instituting procedure for review).

For now, however, the Court takes Mr. Baker's representation as an officer of the Court at face value. Mr. Baker has stated there has been no violation of Section 5(a) of the stipulated protective order, and represents he has not disseminated or shared confidential information, including SSI, with Clearwater or any third party. This is in line

---

[10] The Court makes no findings regarding Ely's argument that, pursuant to ERISA, such negotiations and their outcomes would not be confidential.

**MEMORANDUM DECISION AND ORDER - 17**

with the purpose of the protective order, which precludes disclosure of confidential information to the public and third parties.

The Court therefore will deny the Board of trustees' motion and will not award either party attorney fees. Should it later come to light that information protected from disclosure in this litigation is being disclosed or utilized in violation of the protective order, the Board may bring an appropriate action.

**3.     Motion to Supplement**

Ely seeks to supplement two motions currently before the Court, specifically: (1) Plaintiff's Motion in Limine to Exclude Expert Report and Testimony of Joseph Hicks (based in part on the Board of Trustees' failure to produce many of the underlying documents) (Dkt. 92); and (2) Defendant's Cross-Motion for Summary Judgment (Plaintiff's MSJ Dkt. 84; PIUMPF's MSJ Dkt. 105). Ely requests also that the Court enter an order allowing him to supplement his response to Defendant's Motion to Enforce Protective Order (Dkt. 99).

Ely claims that supplementation is warranted because certain evidence was not timely produced during discovery, and he contends the Board of Trustees should be prohibited from introducing the evidence in support of its substantive motions. Ely relies upon Fed. R. Civ. P. 26, 33, and 34, which require supplementation of prior discovery responses, as well as Rule 37(c)(1), which prohibits the use at trial of any information required to be disclosed that was not properly disclosed during discovery.

The Board of Trustees contends Ely's motion is nothing more than a disguised attempt to file a sur-reply to the pending motions and inject additional argument. The

**MEMORANDUM DECISION AND ORDER  - 18**

Board of Trustees responds substantively to the arguments Ely raises, arguing that Ely's arguments do little to advance his position.

Upon review of the motion to supplement, and the corresponding response and reply, it appears the parties merely wish to supplement prior arguments raised in the pending motions for summary judgment and motions in limine. Accordingly, the Court will treat Ely's motion as a request to file a sur-reply, and may consider the arguments raised therein, and in the Board's response, in conjunction with the motions for summary judgment and related motions to strike. *See, e.g., Nelson-Ricks Cheese Co., Inc. v. Lakeview Cheese Co., LLC,* 331 F. Supp. 3d 1131, 1148 (D. Idaho 2018), *aff'd*, 775 F. App'x 350 (9th Cir. 2019) (considering additional arguments raised in motion to supplement and reply thereto in context of parties' motions for summary judgment, and finding that none of the additional information raised a genuine issue of material fact). However, the Court will deem the motion to supplement moot with respect to the additional arguments raised in opposition to the Board of Trustees' motion to enforce the protective order.

**MEMORANDUM DECISION AND ORDER - 19**

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Motion to Unseal (Dkt. 143) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff's request to vacate the protective order is **DENIED**. However, the Clerk is directed to **UNSEAL** all documents currently filed under seal **EXCEPT** the following:

   a. Docket 85 – Baker Decl. Ex. 7.
   b. Docket 102 – Baker Decl., Ex. 3.
   c. Docket 103 – Oppenheimer Decl., Exs. 10, 11.
   d. Docket 109 – Knight Decl. Ex. 47.
   e. Docket 138 – Baker Decl., Exs. 4, 11, 14, 15, 21, 22.
   f. Docket 138 – Baker Decl., Exs. 5 – 10, 19.
   g. Docket 144 – Ex. F.

2) Defendant's Motion to Enforce Protective Order (Dkt. 99, 103) is **DENIED** without prejudice.

3) Plaintiff's Motion to Supplement (Dkt. 153), which the Court considers as a sur-reply, is **GRANTED IN PART and DENIED IN PART**. The parties' additional arguments raised in the motion and in the response thereto may be considered by the Court in conjunction with the parties' pending motions for summary judgment and related motions in limine.

DATED: November 23, 2020

Honorable Candy W. Dale
United States Magistrate Judge